UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULINE WAGES, : | CIVIL ACTION NO. |
|     Plaintiff, : | 3:11-CV-1571 (JCH) |
| : | |
| v. : | |
| : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | JUNE 26, 2013 |
|     Defendant, : | |

**RULING RE: PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S RECOMMENDED RULING (Doc. No. 26)**

**I.   INTRODUCTION**

Plaintiff Pauline Wages ("Wages") brings this action pursuant to section 1631(c)(3) of the Social Security Act to review a final decision by defendant, the Commissioner of Social Security ("Commissioner"), denying Wages' claim for Disability Insurance Benefits. On March 26, 2013, Magistrate Judge Holly B. Fitzsimmons issued a Recommended Ruling, denying Wages' Motion to Reverse (Doc. No. 18) and granting the Commissioner's Motion to Affirm (Doc. No. 24). Baker now objects to the Recommended Ruling. See (Doc. No. 26).

**II.   STANDARD OF REVIEW**

As a preliminary matter, a district court reviews, de novo, those portions of a magistrate judge's recommended ruling to which an objection is made. The court may adopt, reject, or modify, in whole or in part, a magistrate judge's recommended ruling. See 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3).

In review of a Social Security disability determination, a court will set aside the decision of an administrative law judge ("ALJ") "only where it is based upon legal error

or is unsupported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir.1998). As the Supreme Court has instructed, substantial evidence means more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation and citation omitted). Rather, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F.Supp.2d 179, 189 (D.Conn.1998).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently. See Eastman v. Barnhart, 241 F.Supp.2d 160, 168 (D.Conn.2003). In other words, "[w]here an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir.1998).

### III.   ANALYSIS

Baker makes five arguments in her Objection to the Report and Recommendation of the United States Magistrate Judge: (1) the ALJ failed to give the treating physician's opinion controlling weight (or provide adequate justification for failing to do so) and relied upon the opinions of non-treating, non-examining medical record reviewers to invalidate the treating physician's opinion; (2) the ALJ failed to properly determine Wages' credibility by using impermissible boilerplate, relying on the opinions on non-treating, non-examining sources, and failing to award Wages a

presumption of credibility because she had a "solid work history;" (3) the ALJ failed to conduct the medical equivalency analysis; (4) the ALJ failed to consider non-severe impairments when determining Wages' residual functional capacity; and (5) the ALJ failed to resolve inconsistencies between the DOT and the vocational expert's testimony.

    A.  <u>Treating Physician Rule</u>

In Social Security disability cases, "[t]he opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with the other substantial evidence." <u>Rosa v. Callahan</u>, 168 F.3d 72, 78–79 (2d Cir.1999); <u>see also</u> 20 C.F.R. § 416.927(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "Generally, . . . more weight [is given] to opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F .R. § 404.1527(d)(2).

Wages claims that the ALJ erred in refusing to give controlling weight to Dr. Bash's opinion according to the treating physician rule, and that failure to do so constituted legal error. Objection at 4. The ALJ stated that he "considered and gave some weight to the opinion of Dr. Bash . . . to conclude that the claimant had a sedentary residual functional capacity . . . [but he] did not adopt the opinion of Dr. Bash

that limited the claimant to lifting up to five pounds, because [Dr. Bash also] assigned a disability rating of only ten percent, so a limitation on lifting up to five pounds did not appear consistent with the overall record." Certified Transcript of the Proceedings ("Tr.") at 16 (ALJ Ruling).

Magistrate Judge Fitzsimmons ruled that the ALJ did not violate the treating physician rule because Dr. Bash's opinion was not consistent with other substantial evidence in the record—including the opinions of other medical experts—and was not entitled to controlling weight. Rec. Ruling at 43. The Recommended Ruling cited two types of inconsistent evidence: (1) Dr. Stevens' opinion that plaintiff could lift up to twenty pounds while wearing a lumbosacral corset; and (2) Dr. Bernstein's and Dr. Golkar's opinions that Wages could occasionally lift twenty pounds. Id. at 43-44.

First, as to the opinions of Dr. Bernstein and Dr. Golkar, because they are the opinions of reviewing state agency medical consultants—not treating physicians—they are "insufficient to outweigh the opinion of a treating physician who cared for . . . [the plaintiff] over a period of time and who provided an opinion supported by explanation and treatment records." Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001); see also Brickhouse v. Astrue, 331 Fed. Appx. 875, 877 (2d Cir. 2009) (stating that, by relying on the findings of a state disability adjudicator who was not a physician and who never saw the petitioner, the ALJ found conflicts and weaknesses in the treating physicians' opinions where none exist); Ryan v. Commissioner of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (stating that it is not possible to cure the ALJ's rejection of the examining physician's opinion with his finding that the rejection was consistent with the opinions of two non-examining physicians"); Lester v. Chater, 81 F.3d 821, 831 (9th

Cir. 1995) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."). In Ryan, the court relied on the fact that the non-examining physicians did not provide a supporting explanation for their opinions to determine that the non-examining physicians' opinions did not outweigh the treating physician's opinion. Ryan, 528 F.3d at 1201 (citing then 20 C.F.R. §404.1527(d)(3)). The same can be said of the opinions set forth by Drs. Bernstein and Golker, which merely answer questions—without providing any support for their answers—set forth in forms created for the purposes of the initial and reconsideration level reviews. Tr. at 52-70; see also Ryan, 528 F.3d at 1201 ("The Mental Residual Functional Capacity Assessment ("MRFCA") form completed by Drs. Harman and Harrison contains no supporting explanation whatsoever for their opinion that 'with continued [treatment]' Ryan could complete a regular workweek. That was simply their bare conclusion after checking a series of boxes on the MRFCA form.").

Second, as to Dr. Stevens' opinion that Wages could lift up to 20 pounds while wearing a lumbosacral corset, the court disagrees that this opinion is inconsistent with Dr. Bash's opinion. Dr. Stevens stated on September 2, 2009, that, "[r]egarding her work capacity with her lumbosacral corset, I think she could do gainfully employed with certain restrictions with no heavy lifting more than 20 pounds." Tr. at 248. However, a week later, on September 9, 2009, he wrote, "[s]he is wearing a lumbosacral corset, which is not helping her." Tr. at 247. Therefore, as of September 9, 2009, Dr. Stevens no longer appears to rely on his initial assessment from September 2, 2009, that Wages could lift up to 20 pounds while wearing the corset. His assessment is certainly not

"substantial evidence" sufficient to override Dr. Bash's February 15, 2011, opinion that Wages could not lift more than five pounds. Tr. at 299.

Furthermore, Dr. Stevens' opinion, relied upon by the ALJ, was from September 2, 2009. Tr. at 248. Dr. Bash's opinion was almost a year and a half later. Tr. at 299. When there is a lengthy time period between opinions, "the ALJ must explain his decision to choose the earlier opinion over the more recent opinion where deterioration of a claimant's condition is possible." Balodis v. Leavitt, 704 F.Supp.2d 255, 266 (E.D.N.Y. 2010); see also Ligon v. Astrue, 2008 WL 5378374, at *12 (E.D.N.Y. Dec. 23, 2008) (("None of those physicians [relied upon by the ALJ] . . . treated [plaintiff] in the 20 months prior to his hearing. While it is certainly appropriate to consider prior physicians' statements, to give them greater weight than a treating physician's more recent findings without additional explanation amounts to legal error. It is possible, for example, that [plaintiff's] condition deteriorated . . . ").

Lastly, to the extent that the ALJ based his determination that Dr. Bash's opinion—that Wages could lift less than five pounds—was in contention with the record evidence because Dr. Bash himself assigned a disability rating of only 10 percent, see Tr. at 16,[1] it was improper for the ALJ to fail to seek additional clarification from Dr. Bash to resolve the ambiguity in his two assessments.[2]  See Norman v. Astrue, 2012 WL 4378042, at *5 (S.D.N.Y. Sept. 25, 2012) ("The Social Security regulations require the

---

[1] "I did not adopt the opinion of Dr. Bash that limited the claimant to lifting up to five pounds, because he assigned a disability rating of only ten percent, so a limitation on lifting up to five pounds did not appear consistent with the overall record." Tr. at 16.

[2] Furthermore, to the extent the ALJ failed to adopt Dr. Bash's opinion because "the records from Dr. Bash included his opinion that Ms. Wages was not a surgical candidate, but he thought that the back impairment might require additional conservative treatment," Tr. at 16, "the opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008).

6

ALJ to 'seek additional evidence or clarification from [claimant's] medical source when the report from [claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'"). Although Magistrate Fitzsimmons stated that, "'because the record evidence was adequate to permit the ALJ to make a disability determination,' there is no merit in plaintiff's claim that the ALJ was obligated to recontact Dr. Bash," Rec. Ruling at 45, as stated above, see supra, pp. 5-6, the record evidence was not adequate to override Dr. Bash's opinion that Wages could not lift more than five pounds.  Therefore, it was error to reject Dr. Bash's opinion based solely on the apparent inconsistency with his disability rating.  See Carvey v. Astrue, 380 Fed. Appx. 50, 52 (2d Cir. 2010) (stating that, "an ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings").

    B. Credibility Determination

Wages argues that the ALJ used impermissible boilerplate and relied improperly on the opinions on non-treating, non-examining sources, when assessing Wages' credibility.  Further, she argues that she was entitled to a presumption of credibility because she has a "solid work history."  Obj. at 3.

As to Wages' complaints about boilerplate, she argues that the ALJ's finding—"that the claimant's allegations regarding the severity of her symptoms and limitations were not credible to the extent that they were inconsistent with the ALJ's residual functional capacity assessment"—is "meaningless bunk."  Obj. at 2.  Wages compares

7

the ALJ's "boilerplate" to that rejected in Bethea v. Astrue, 2011 WL 977062, at *13 (D. Conn. Mar. 17, 2011).

In Bethea, the court rejected the ALJ's boilerplate because it gave "the court no guidance as to which parts of plaintiff's testimony ALJ Thomas found not credible and why." Bethea, 2011 WL 977062, at *13.  In Bethea, the ALJ rejected the claimant's testimony regarding the intensity and persistence of his symptoms by stating, without support from the record, that "after treatment [for the hernia] the claimant does quite well and there is no indication that this impairment would interfere with his ability to perform work activity at the light level of exertion."  Id.  Unlike in Bethea, the ALJ here cited evidence from the record to support his finding that Wages' testimony regarding the intensity and persistence of her symptoms was inconsistent with the medical record. Tr. at 16 (commenting that Wages was not a surgical candidate, that Dr. Stevens stated she could lift up to 20 pounds while wearing a corset, that Dr. Bash assigned Wages a disability rating of 10 percent).  While the ALJ's findings are, therefore, not subject to reversal, in this instance, for failure to "provide specific reasons for finding a claimant's testimony not credible," Malloy v. Astrue, 2010 WL 7865083, at *29 (D. Conn. Nov. 17, 2010), the fact that the ALJ relied on evidence on which he placed improper weight, see supra, pp. 5-7 (treating physician rule), is.

Wages' second complaint—that the ALJ relied improperly on the opinions of non-treating, non-examining sources to discredit her complaints of pain—is a version of her argument that the ALJ violated the treating physician rule.  Therefore, to the extent that the ALJ's credibility determination relied on these non-treating, non-examining sources, the ALJ should reconsider the weight placed on such evidence on remand.

With regard to Wages' argument that she was entitled to a presumption of credibility because she has a "solid work history," Obj. at 3, as Magistrate Judge Fitzsimmons noted, work history "is just one of many factors that the ALJ should consider." Rec. Ruling at 58. "SSA regulations provide that the fact-finder 'will consider all of the evidence presented, including information about your prior work record.'" Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (citing 20 C.F.R. § 416.929(c)(3)) (stating that work history may be deemed probative of credibility). But, "that factor alone . . . is not dispositive in determining credibility and does not override all of the other evidence of record." Malloy, 2010 WL 7865083, at *29. Although Magistrate Judge Fitzsimmons stated that the ALJ did not ignore Wages' past work history because "[h]e specifically addressed it in concluding that plaintiff was not able to perform her past relevant work," Rec. Ruling at 58, this analysis related to the ALJ's finding—<u>after</u> he considered whether Wages' testimony about her pain was credible—of whether Wages could perform her past relevant work in light of his determination of her residual function capacity. See Tr. at 12, 17. Wages complains that the ALJ failed to weigh her solid work history when considering whether her testimony regarding her pain and level of impairment was, in fact, credible. Although failure to consider Wages' work history "in and of itself does not require a reversal," it "is something the ALJ should consider on remand." Malloy, 2010 WL 7865083, at *29.

C. Medical Equivalency Analysis

Wages argues that, while determining that Wages' impairments did not "meet" the criteria of an impairment listed in 20 CFR Part 404, Subpart P, appendix 1 (20 CFR 416.920(d), 416.925, and 416.926), the ALJ failed to determine whether her

9

impairments were "medically equivalent" to a listing.  Obj. at 5.  Specifically, Wages argues that the ALJ failed to consider the combined effects of obesity when assessing Wages' individual functional capacity.  Id. at 7.  Wages also argues that, in her Recommended Ruling, Magistrate Judge Fitzsimmons went into a detailed analysis as to why Wages' impairments do not "meet" Listing 1.04, but failed to consider whether the ALJ determined— and whether the record supported a finding—that the impairments are "medically equivalent" to the Listing.  Obj. at 5.

The court agrees with Magistrate Judge Fitzsimmons' well-reasoned and articulated discussion as to the fact that Wages' impairments do not meet Listing 1.04.  Rec. Ruling at 33-39.  Therefore, the court will only consider whether the ALJ performed properly the "medical equivalence" analysis: it agrees with Magistrate Judge Fitzsimmons that he did.

Impairments are "medically equivalent" to a listed impairment if they are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926.  There are three ways in which an ALJ can find that an impairment or impairments are medically equivalent: (1) you have an impairment described in a Listing, but you do not exhibit one or more of the findings specified in the particular listing or you exhibit all of the findings, but one or more is not as severe as specified in the Listing, and you have other findings related to your impairment that are at least of equal medical significance to the required criteria; (2) you have an impairment not described in the Listing of Impairments, but the findings related to the impairment are at least of equal medical significance to those of a listed impairment; and (3) you have a

combination of impairments, none of which meets a Listing, but which are at least of equal medical significance to a Listing. 20 C.F.R. § 416.926(b)(1)-(3).

Wages argues that the ALJ failed to consider, under the third approach for medical equivalence, whether her back pain and obesity were medically equivalent to a Listing. Obj. at 7. The SSA regulations state that, "[w]e will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." SSR 02-1P. By way of example, the regulations explain how obesity may place strain on a claimant's cardiovascular and respiratory systems such that the body is unable to perform additional work as would otherwise be expected. Id.

Magistrate Judge Fitzimmons stated that the ALJ considered whether Wages' combined impairments were medically equivalent to Listing 1.04 when he found that Wages did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." Rec. Ruling at 39 (citing Tr. at 14); see also Francis v. Astrue, 2010 WL 3432839, at *4 (D. Conn. Aug. 30, 2010) (finding that a similar analysis was sufficient). The ALJ noted that "the objective medical evidence revealed that it was not of a severity, which would satisfy the requirements of the listing," Tr. at 14, suggesting that he considered whether the plaintiff's symptoms were as significant as those presented in the Listing. 20 C.F.R. § 416.926(b)( 3). The ALJ,

11

as noted by Magistrate Judge Fitzsimmons, also said[3] that he "consider[ed] the impact from obesity and the chronic pain syndrome" as well as the overall impact of obesity on all Wages' symptoms and impairments.  Tr. at 16.  As Magistrate Judge Fitzsimmons noted, "although the ALJ could have been more specific in detailing the reasons why plaintiff's condition or combination of impairments did not satisfy a listed impairment . . . 'this is not a case in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, [therefore] there is no need for us to remand this case to the ALJ for clarification.'"  Rec. Ruling at 40-41.  The court agrees.

    D. <u>Non-Severe Impairments</u>

Wages claims that the ALJ failed to consider her non-severe impairments—particularly, her asthma—when determining her RFC.  However, Magistrate Judge Fitzsimmons noted that the ALJ found that Wages' asthma was non-severe and "did not cause any functional limitations or that any limitations were minimal at best.'"  Rec. Ruling at 49 (citing Tr. at 14).  Wages merely argues in her Objection that, although she has not suffered an acute attach of asthma, "the fact that she is being treated for and being prescribed medication for asthma indicates that she is susceptible to the effects of environmental and chemical irritants."  Obj. at 8.  The court does not see how "susceptibility" is enough to impact a claimant's RFC when the analysis is focused on (1) whether there is an underlying impairment which could reasonably be expected to produce the claimant's pain, and (2) how intense, persisting, and limiting the claimant's symptoms are.  Tr. at 15.

---

[3] The ALJ noted the impact of obesity when making his RFC determination, Tr. at 16; however, the court believes his reference at the RFC stage to the overall impact of Wages' obesity on all of her symptoms and impairments suggests he considered such factors throughout his analysis, including when determining that her combination of impairments did not equal one of the listed impairments, <u>id.</u> at 14.

E.  Inconsistencies Between the DOT and the Vocational Expert's Testimony

Lastly, Wages' argues that, in step five, the ALJ failed to resolve inconsistencies between the DOT and the vocational expert's testimony when he determined that, "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform."  Tr. at 17.  By way of argument, Wages cites to the case of Vazquez v. Astrue, 3:11-v-582 (AWT), in which the court remanded the case to the Commissioner because (1) the vocational expert testified as to positions that the plaintiff could perform, which did not appear in the DOT, (2) he did not provide any basis for his testimony beyond his experience and knowledge, and (3) he did not provide evidence to allow the ALJ to determine whether his testimony conflicted with the DOT.  Vazquez, (Doc. No. 27) at 14.

As Magistrate Judge Fitzsimmons explained in her Recommended Ruling, as to the first reason for remand set forth in Vazquez, "the plaintiff fails to address . . . the fact that the VE . . . identified 'representative DOT' numbers for the[ ] positions" he testified were available to a claimant like Wages.  Rec. Ruling at 61.  Therefore, the first reason for remand in Vazquez is not at issue in the current case.  As for the other two reasons, Magistrate Judge Fitzsimmons points to the case of Bellamy v. Apfel, 110 F. Supp. 2d 81, 92 (D. Conn. 2000), for support for the finding that there was no error in the ALJ's reliance on the vocational expert's testimony.  In Bellamy, the court held that, after the ALJ asked numerous hypothetical questions of the vocational expert regarding the number of jobs that would be available given the claimant's physical limitations, the ALJ could reasonably rely on the vocational expert's responses to determine that there were

a significant number of jobs in the national and local economy that the claimant could perform.  Id. at 92.  While Bellamy so held, the court in Vazquez cites to numerous cases in which courts have remanded back to the Commissioner when the vocational expert failed to provide any support for his testimony that the unskilled jobs to which he testified exist in substantial numbers.  Vazquez, at 14.  The Western District of New York recognizes that, "[t]here is a split among the Circuits on whether a vocational expert's testimony as to the significant number of jobs that exist can be taken merely upon the word of the expert due to his or her recognized expertise."  Ali v. Astrue, 2010 WL 502779, at *5 (W.D.N.Y. Feb. 9, 2010) (noting a split between the Seventh and Ninth Circuits and finding that the vocational expert did not provide sufficiently reliable testimony).  According to the District of Connecticut, "[d]istrict courts within the Second Circuit have tended to align more closely with the Seventh Circuit approach [of requiring some evidentiary basis to rely upon the opinions of the vocational expert]."  Jones-Reid v. Astrue, 2012 WL 7808094, at * 25 (D. Conn. May 24, 2012).

In this case, the vocational expert provided no support for his assertion that jobs existed, which were available to those that met the functional limitations imposed by the ALJ's hypotheticals.  Tr. at 45-47.  Therefore, on remand, the ALJ should "probe into the reliability of the expert's findings," Ali, 2010 WL 502779, at *5, before determining whether there "is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998).

## IV.  CONCLUSION

For the reasons discussed herein, and based on a review of the Magistrate Judge's Recommended Ruling (Doc. No. 25), that Ruling is **REJECTED IN PART.**

Wages' Motion (Doc. No. 18) is **GRANTED,** and defendant's Motion to Affirm the Decision of the Commissioner (doc. No. 24) is **DENIED.**  This case is **remanded** to the Commissioner for further proceedings consistent with this Ruling.

**SO ORDERED.**

  Dated at New Haven, Connecticut, this 26th day of June, 2013.


          <u>     /s/ Janet C. Hall     </u>
          Janet C. Hall
          United States District Judge